UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| MILER ANN HENRY | ) | |
| | ) | |
| Plaintiff, | ) | 1:24-CV-00059 |
| | ) | |
| vs. | ) | |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | | |

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Claimant's claim for Disability Insurance Benefits ("DIB") was denied on December 20, 2022, following a hearing before an Administrative Law Judge. This action is for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). [Doc. 1]. Plaintiff filed an opening brief [Doc. 12], to which the Commissioner filed a response [Doc. 14]. Plaintiff then filed a Reply. [Doc. 15]. For the reasons set forth below, the undersigned **RECOMMENDS** that Claimant's request for remand be **DENIED**, and the determination of the Administrative Law Judge be upheld.

## I.      APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow.  The Court is limited to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards.  42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 721 (S. D. Ohio 2019). "It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury." *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). At the same time, the Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001); *see also Kushner v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 797, 802 (E.D. Mich. 2019). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). On the other hand, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

A claimant must suffer from a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The ALJ's review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A full review addresses five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1?

4.    Considering the claimant's Residual Functional Capacity ("RFC"), can he or she perform his or her past relevant work?

5.    Assuming the claimant can no longer perform his or her past relevant work, and also considering the claimant's age, education, past work experience, and RFC, do significant numbers of other jobs exist in the national economy which the claimant can perform?

*See* 20 C.F.R. § 404.1520.  A claimant bears the burden of establishing entitlement to benefits by proving the existence of a disability. *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *see also Bowermaster v. Comm'r of Soc. Sec.*, 395 F. Supp. 3d 955, 959 (S.D. Ohio 2019). It is the Commissioner's burden to establish a claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 855 (M.D. Tenn. 2019).

## II.    PROCEDURAL AND FACTUAL OVERVIEW

Miler Ann Henry[1] filed an application for Social Security Disability Insurance Benefits on November 15, 2019, alleging a disability onset date of June 25, 2019. (Tr. 17).[2] Claimant alleges that her sciatic nerve damage, asthma, high blood pressure, and lower bilateral lumbar pain render her disabled. (Tr. 22). The claim was denied initially and again on reconsideration. (Tr. 17). Thereafter, Claimant filed a written request for a hearing. (Tr. 17). On August 24, 2022, Administrative Law Judge ("ALJ") Suhirjahaan Morehead held a telephonic hearing due to the

---

[1] The Complaint caption uses Miler Ann Henry f/k/a Miler Ann Hurt, and Claimant is primarily referred to as Miler Ann Hurt throughout the record. [ Doc. 1; *see also* Transcript].

[2] References to page numbers in the Transcript, designated as "(Tr. __)" are to the large black numbers in the bottom, righthand corner of the page. References to Exhibits in the Transcript are designated as (Tr. Ex. __, p. __).

3

extraordinary circumstances presented by the COVID-19 pandemic. *Id*. Following the final hearing, the ALJ issued a decision on December 20, 2022, finding Claimant was not disabled. (Tr. 17-27). In her decision, the ALJ found the following:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023;

2.  The claimant has not engaged in substantial gainful activity since June 25, 2019, the alleged onset date;

3.  The claimant has the following severe impairments: osteoarthritis and hypertension;

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can frequently perform postural activities, cannot climb ladders, ropes, or scaffolds and can have no exposure to workplace hazards such as unprotected heights or moving mechanical parts;

6.  The claimant is capable of performing past relevant work as a cleaner housekeeping DOT#323.687-014, light, svp2 unskilled. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity;

7.  The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2019, through the date of this decision.

*See* (Tr. 17-27). On December 20, 2022, the Appeals Council denied a subsequent request for review, and as a result, the ALJ's decision ("the decision") became the final decision of the Commissioner of Social Security.

On appeal, Claimant asserts that the ALJ committed four errors which necessitate that this case be remanded. First, Claimant argues that the ALJ failed to make any findings regarding her use of a cane, which she claims to be medically necessary. [Doc. 12, p.1]. Claimant further contends that her use of the cane prevents her from performing light work. *Id.* She also takes issue with the ALJ's treatment of her back pain and her difficulty ambulating, including the ALJ's conclusion that her difficulty walking primarily stemmed from an acute knee injury Claimant

suffered in August 2020.[3] Claimant argues that the medical evidence demonstrates that she was using a cane to address her gait and ambulation challenges prior to, and long after, the acute injury to her knee. [Doc. 12, p. 3-7], She further alleges that the ALJ's opinion failed to adequately discuss the impact of her gait abnormalities on her ability to perform light work. [Doc. 12, p. 6]. In support of these arguments, Claimant points to the opinion of consultative medical examiner Dr. Stephen K. Goewey, who examined Claimant in July 2020. (Tr. 481-83). During that appointment, Dr. Goewey noted that for the previous four months, Claimant had used a cane "that ha[d] been prescribed 100% of the time outside the house and 70% of the time inside the house," and concluded "claimant will benefit from assistive device especially for uneven surfaces." (Tr. 481-83). Claimant also points to the extensive physical therapy she underwent during February and March 2021 which was focused on balance and ambulation, after her assessment by Dr. Goewey. (Tr. 593, 596, 598, 601).[4] While the ALJ identified treatment notes from October 2019 indicating that "the claimant was using a cane for balance" and noted references throughout the medical record to Claimant's antalgic gait, she ultimately found the opinion of Dr. Goewey to be unpersuasive and inconsistent with the weight of the medical record. (Tr 20-24) (referencing Tr. 381, Ex. 9F).

In response, the Commissioner argues that Claimant's reported dependence on a cane and/or walker is accounted for in the ALJ's decision, and that her conclusion that the overall record did not support Claimant's need for and reliance upon a cane was well-reasoned. (Doc. 14, p. 5). The Commissioner pointed to the ALJ's observations that weighed both for and against Claimant's need for ambulatory support and noted that the ALJ simply found the evidence against Claimant outweighed the evidence for her on this point. *Id*. at 7-8.

---

[3] Claimant's brief identifies the date of injury as August or September 2020. [Doc. 12, p. 4]. The actual date of injury is not clear from the medical records, which alternately list July 25, 2020 (Tr. 593, throughout 9F), August 25, 2020 (Tr. 539), and September 11, 2020 (Tr. 822). A note from Dr. Ingram indicates the initial x-rays for the injury were taken in August 2020 (Tr. 656).
[4] Claimant had knee surgery for ACL reconstruction and meniscal repair in January 2021. [Tr. Ex. 9F].

5

As her second and third assignments of error, Claimant asserts that the ALJ failed to properly evaluate the medical opinions of Dr. Goewey and consultative psychologist Dee Moise Langford, PhD. [Doc. 12, p. 1]. As to Dr. Goewey, Claimant asserts that the ALJ improperly discounted the doctor's findings and opinions and failed to adequately explain why she found Dr. Goewey's opinion unpersuasive. [Doc. 12, p. 7]. Claimant goes on to highlight other parts of her medical records that support Dr. Goewey's conclusions, as well as Social Security regulations which require an ALJ to explain "how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). According to Claimant, this is a critical misstep because Dr. Goewey's opinion established that she had limitations which would prevent her from engaging in full-time work. [Doc. 12, p. 7].

On the other hand, the Commissioner points out that the ALJ spent several pages addressing Claimant's symptoms before concluding that Dr. Goewey's opinion was unpersuasive. [Doc. 14, p. 10] (referencing (Tr. 22-25)). In her analysis, the ALJ references diagnostic records, imaging, and provider notes. (Tr. 22-25). The Commissioner maintains that when the ALJ's opinion is read as a whole, it reflects that the ALJ adequately addressed the supportability and consistency factors. [Doc. 14, p. 10-11] (citing *Crum v. Comm' r of Soc. Sec.*, 660 F. App' x 449, 457 (6th Cir. 2016)).

Claimant also takes issue with the fact that the ALJ found Dr. Langford's opinion persuasive but did not adopt the limitations that Dr. Langford assigned to Claimant. [Doc. 12, p. 13]. Specifically, Dr. Langford, a consultative psychologist, noted that Claimant "reported some problems with short-term memory and concentration" and "showed slight evidence of impairment in concentration" but was seeking a disability determination because of her back condition. (Tr. 490). According to Claimant, the ALJ's failure to either explicitly adopt or reject these findings, and account for them in her RFC determination, necessitates remand. [Doc. 12, p. 13]. In response, the Commissioner maintains that the ALJ did note that Claimant experienced these mild issues

6

with short-term memory and concentration as documented by Dr. Langford, but because they were no greater than mild, the ALJ determined that they did not materially limit Claimant's ability to do basic work activities. [Doc. 14, p. 14] (citing 20 C.F.R. §§ 404.1520a(d)(1), 404.1522(a)]; *see also* [Doc. 14, p. 20-21].

Finally, Claimant argues that the ALJ failed to consider Claimant's ability to afford medical treatment in determining that she was not disabled. [Doc. 12, p. 13-14]. Claimant points to several places in the record that allude to or explicitly state that her lack of insurance limited her ability to seek medical treatment. [Doc. 12, p. 13-14]. On the other hand, the Commissioner contends that this limitation is acknowledged in the ALJ's opinion. [Doc. 14, p. 19]. Additionally, the Commissioner asserts that despite Claimant's lack of insurance the medical evidence of record demonstrates that she had the ability to access treatment throughout the relevant timeframe, and further notes that the ALJ herself made this observation. [Doc. 14, p. 19]. Ultimately, the Commissioner maintains that the ALJ's final decision is supported by substantial evidence and should be affirmed. [Doc. 14, p. 20].

Claimant filed a reply brief reiterating the arguments contained in her initial brief. [Doc. 15]. Additionally, she asserts in the reply that the Commissioner's briefing attempts to impermissibly fill gaps left by the ALJ's opinion. [Doc. 15].

The Court has reviewed the evidence contained in the transcript filed in this matter in conjunction with addressing the arguments of the parties. This includes review and consideration of Claimant's medical records which the Court will address as necessary to fully analyze the issues raised by the parties. (Tr. Ex. 1F-16F). The Court notes that the records contained in Exhibit 1F were generated before Claimant's alleged onset date, Exhibits 3F and 9F contain records from both before and after Claimant's alleged onset date, and the records contained in Exhibits 2F, 6F, 8F, 10F, 11F, 12F, 13F, 14F, 15F, and 16F were all generated after Claimant's alleged onset date. Additionally, the Court has reviewed and considered the opinions provided by state agency

medical consultants and consultative examiners. (Tr. Ex. 4F, 5F, and 7F). Lastly, the Court has reviewed and considered the hearing testimony and other filings made by Claimant regarding her condition. (Tr. 33-50). Having done so, the Court will now address the errors alleged by Claimant in the context of the parties' arguments and applicable law.

### III.    LEGAL ANALYSIS

The overarching issue for review is whether the ALJ's decision is supported by substantial evidence. As noted above, the ALJ found Claimant to have the severe impairments of osteoarthritis and hypertension but determined that the Claimant did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (the "Listings") (Tr. 21). The ALJ further found that Claimant retained the RFC to perform a reduced range of light work with frequent postural activities, except that she could not climb ladders, ropes, or scaffolds and could have no exposure to workplace hazards such as unprotected heights or moving mechanical parts. (Tr. 22). *See* 20 C.F.R. § 404.1520 (noting that step four of an ALJ's five question review involves formulating a claimant's residual functional capacity). While the Claimant alleges that multiple errors were committed, it is how these errors impact the ALJ's conclusion that Claimant retained the residual functional capacity, with limitations, to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), that is the primary focus.

In evaluating the ALJ's decision, the Court notes that an ALJ is entitled to a "zone of choice" in determining whether a claimant is disabled if the facts could support a ruling either way. *Blakely*, 581 F.3d at 406. As such, the Court will not disturb an ALJ's decision even if the Court would have decided the matter differently so long as the ruling was rendered in compliance with applicable law and is based on substantial evidence. "Substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (internal citations omitted); *Fox v.*

*Comm'r of Soc. Sec.*, 827 F. App'x 531, 534 (6th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)).

As part of the multi-step review of a Social Security case, the ALJ must make a residual functional capacity determination. *See* 20 C.F.R. § 404.1520. "Residual Functional Capacity" means "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. ..." 20 C.F.R. § Pt. 404, Subpt. P, App. 2(c). Applicable regulations provide the following guidance for the agency when assessing a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). In rendering a decision about a claimant's RFC, an ALJ is prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the Claimant's] medical sources." 20 C.F.R. § 404.1520c.

### a. Claimant's Use of an Ambulatory Aid and the ALJ's Treatment of Dr. Goewey's Opinion

Two of Claimant's assignments of error are so intertwined that to avoid duplication and for clarity's sake, the Court will address them together. Claimant has asserted that the ALJ erred in how she treated the issue of whether Claimant needed an assistive device, and further contends that the ALJ erred in discounting Dr. Goewey's opinion. These issues intersect because it is Dr. Goewey who opined that Claimant would benefit from the use of an assistive device.

Claimant argues that, in addition to her own testimony, there is ample evidence in the record documenting her need for at least frequent, if not constant, use of a cane for balance and

ambulation, and that the ALJ failed to consider the impact of this medical necessity in formulating her RFC. [Doc. 12]. During her hearing, Claimant testified that she is only able to stand without a cane or some other assistance for three to four minutes. (Tr. 41). At the same time, during her hearing before the ALJ, Claimant acknowledged that she was performing some work as a custodian. When questioned about how she was able to perform her job duties, such as waxing floors, if she could only stand without a cane for three to four minutes, Claimant stated that when she was waxing floors two weeks prior to the hearing, she was not "in such big excruciating pain" and explained that she would use the implements of the job as ambulatory aids to help bear her weight while she was working. (Tr. 41-42). She did not provide any direct testimony regarding how long she can stand while using an ambulatory aid.

Given Claimant's reliance on the opinion of Dr. Goewey as primary support for her contention that she must use an assistive device, the Court will now consider what specifically Dr. Goewey had to say in his records about the issue. His records document Claimant's statement that she has used a "cane for the past four months that has been prescribed 100% of the time outside the house and 70% of the time inside the house." (Tr. 481).[5] Dr. Goewey also documented that Claimant has a "[r]ight antalgic gait. Braces furniture during attempts of heel, toe, and tandem walk...." (Tr. 482). Ultimately, he concluded that "claimant will benefit from assistive device especially for uneven surfaces." (Tr. 483).

Turning now to the law applicable to assessing these two assignments of error by Claimant, the Court first observes that instead of simply deferring to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence including (1) supportability; (2) consistency; (3) a source's relationship with the Claimant; (4) specialization; and (5) other supporting or contradicting factors. 20 C.F.R. § 416.920c. This rule for the evaluation of opinion evidence

---

[5] The Court is not able to find a prescription for an ambulatory aid in the medical record. There is a note from Dr. Leah Umphlett from Claimant's disability determination medical evaluation in December 2020 that says "Uses cane, no Rx." (Tr. 60).

departs from the rule which was applied to claims filed before March 27, 2017. *Compare* 20 C.F.R. § 404.1527 (the "old rule") *with* 20 C.F.R. § 404.1520c (the "new rule"). The rule now in effect notably "reduc[es] the articulation standards required for ALJs in assessing medical source opinions." 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:13 (2nd ed.). As other courts have noted in applying this revised rule, "[s]upportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citing *Pogany v. Berryhill*, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 n. 7 (D.S.D. July 3, 2019)) (internal quotations omitted).

In assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based. In other words, "[t]he more relevant the objective medical evidence and supporting explanations…, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In considering consistency, the focus is on how the opinions provided square with the overall record. Specifically, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2). When reviewing a physician's opinion for consistency with the record, an ALJ need not reproduce a list of findings if the relevant medical records are discussed earlier in the decision. *Compare Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (observing that "[n]o doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."), *with McCarter v. Berryhill*, No. 3:16-CV-385-CCS, 2018 WL 327765 (E.D. Tenn. Jan. 8, 2018) (stating that "[t]he Court observes that a discussion of the medical evidence in general is completely absent

from the ALJ's decision… and finds that it is insufficient for the ALJ to conclude that an opinion is contrary to the medical evidence of record and then fail to cite which evidence is in conflict.").

Still, the reduced articulation requirements now applicable in disability cases did not relieve ALJs of their responsibility to provide clear explanations as to their reasoning. Even under these reduced articulation requirements, ALJs must "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors as to each medical opinion." *Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *9 (E.D. Tenn. May 2, 2023) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020); *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)) (internal citations omitted). "In other words, the ALJ must 'build an accurate and logical bridge between the evidence and the ALJ's conclusion.'" *Id.* (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021)).

When the question of the need for an assistive device is at issue, the Sixth Circuit has held that if it is not necessary for a claimant to use a cane, "it cannot be considered an exertional limitation that reduced her ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Social Security Ruling 96-9p explains that "an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand…On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of neurological impairment) may be significantly eroded."

While the ALJ must carefully consider the medical evidence of record in rendering a decision, the ALJ must likewise consider a claimant's own testimony regarding how any physical and mental limitations impact functioning. In doing so, the ALJ is required to consider how closely the medical record lines up with a claimant's self-reported symptoms. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304 at \*3 (6th Cir. 2023) (citing 20 C.F.R. § 404.1529(a)).[6] If there is a discrepancy between a claimant's subjective complaints and the objective medical evidence relating to the degree of impairment-related symptoms, the ALJ should not necessarily "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms." Social Security Ruling 16-3p. Instead, the regulations require the ALJ to consider factors relevant to the claimant's symptoms such as the claimant's daily activities; the duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type and effectiveness of any medication; and any other treatment or measures to alleviate symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). When there are contradictions between the medical reports, claimant's testimony, and other evidence, the ALJ has the "discretion to weigh all of the evidence and to resolve the significant conflicts." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (finding against the claimant where "the medical evidence regarding severity is not consistent and is capable of supporting more than one reasonable conclusion").

In turning now to how the ALJ analyzed these issues, the Court observes that the specific references by the ALJ to Claimant's antalgic gait and use of a cane are somewhat sparse. At the same time, an ALJ is not required to cite to every piece of evidence available in the administrative record. *Showalter*, 2023 WL 2523304 at \*3. Here, the ALJ specifically states in her opinion that "[a]lthough there is some mention of antalgic gait in the medical evidence of record, this was attributed to the claimant's injury to her knee." (Tr. 23). Importantly, the ALJ's observations are

---

[6] This Court is not permitted to weigh questions of Claimant's credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020).

supported by the records that Claimant herself points to in her briefing, i.e., those generated in February and March 2021 when "she participated in physical therapy focused specifically on 'gait and balance.'" [Doc. 12, p. 4; Tr. Ex. 9F]. Without question, these records reference Claimant having an antalgic gait and using crutches, but these references must be placed into context. (Tr. Ex. 9F). Immediately preceding Claimant's physical therapy, she had undergone surgery on her right knee and the therapy notes document the symptoms she was experiencing as she underwent the recovery process following that surgery. The physical therapy notes indicate that Claimant used a walker for the four months leading up to surgery but was encouraged by her surgeon to discontinue use of ambulatory aids shortly after surgery (Tr. 593-94, 612).[7]

Claimant does identify two additional references to antalgic gate contained within her medical records for visits occurring prior to her knee surgery. [Doc. 12, p. 3-4]. One is a note from October 2019 from her primary care provider, Dr. Sonya Johnson which states that Claimant "has leg weakness and is now using a cane for balance." (Tr. 669). During this appointment, Claimant requested a letter detailing her disability and stated she was not able to work due to her back pain. (Tr. 669).[8] Claimant notes that she had fallen in January 2019 in a hospital parking lot causing her to injure herself, unrelated to her later knee injury. [Doc. 12, p. 4]. The other reference in Claimant's brief is to the opinion of Dr. Goewey following his assessment of Claimant, discussed in detail above. [Doc. 12, p. 4]. While this appointment with Dr. Goewey did take place a month prior to Claimant's fall where she injured her right knee, that does not negate the information contained in Claimant's physical therapy notes generated after her right knee surgery which reflect significant improvement in Claimant's gait and balance, along with a recommendation that she discontinue use of an assistive device. (Tr. Ex. 9F).

---

[7] On January 26, 2021, Claimant reported to her physical therapist that her knee surgeon had told her at a surgical follow up appointment to discontinue use of her brace and crutches. This fact alone is not dispositive of the issue of whether Claimant requires the use of a cane moving forward due to chronic pain. (Tr. 612).

[8] A physical therapy appointment from two days prior noted that Claimant was "ambulating with decreased fwd flexion" but did not mention a cane. (Tr. 673).

In making these observations, the Court has not overlooked the two references to Claimant having an antalgic gait after her acute knee injury. [Doc. 12, p. 5]. These references are contained in the records of Dr. Johnson from Claimant's visits with her in June and July 2021. (Tr. 571, 576). While Dr. Johnson does note both that Claimant's gait is abnormal and her back pain continues to be an issue, there is no mention on either visit of Claimant using or being prescribed an ambulatory aid. *Id.* Dr. Johnson did recommend that Claimant undergo physical therapy as a pain control measure. *Id*. Then, in August 2021, Dr. Johnson referred Claimant to Dr. Smith at Siskin Spine and Rehabilitation Services, where Claimant underwent an MRI the results of which showed "minimal lumbar degenerative findings." (Tr. 797-98). The ALJ does specifically reference and address Dr. Smith's conclusions in her opinion under the severe impairments section of her findings. (Tr. 20).

As reflected above, the other reference to Claimant having an antalgic gait and the mention of an assistive device prior to her knee injury is found in Dr. Goewey's records. The Court will now turn to how the ALJ specifically addressed those findings by Dr. Goewey's opinion before finding them unpersuasive overall. In considering Dr. Goewey's opinion, the ALJ found it "inconsistent with the medical evidence of record viewed in its entirety and [that it] appears largely based on the claimant's self-reported symptoms and self-limiting behavior." (Tr. 24). To support this finding, the ALJ points to the conclusions of other providers in the record, including Dr. Martin, who obtained X-rays of the lumbar spine in December 2020 and found them to "show no evidence of acute fracture or malalignment" and the imaging of Claimant's lumbar spine by Dr. Smith in August 2021 which showed minimal degenerative changes. (Tr. 22; Tr. Ex. 7F, p. 501; 10F, p. 797-98). Specifically, the ALJ noted that the imaging of Claimant's back obtained following her examination by Dr. Goewey, which depicts relatively mild degenerative changes, does not support the limitations suggested by Dr. Goewey. (Tr. 22; Tr. Exs. 7F, 10F). Additionally, the ALJ alludes to treatment notes from Claimant's physician that "the claimant has had chronic

15

low back pain with minimal findings on MRI." (Tr. 23; Tr. Ex. 10F). The ALJ also refers to the treatment plan recommended by providers for continued physical therapy. (Tr. 23; Tr. Ex. 13F, p. 858-63).[9] The ALJ also observes that Claimant self-reported her prescription for a cane to Dr. Goewey, and the only other evidence related to Claimant's prescription for an ambulatory aid is found in the records from her disability determination medical evaluation in December 2020, several months after her appointment with Dr. Goewey. That report contains a note from the evaluating doctor which states: "Uses cane, no Rx." (Tr. 60).

The ALJ also found a medical source statement provided by Claimant's primary care provider in October 2021 not to be persuasive. In this statement, the primary care provider specifically documented that Claimant "may return to light duty immediately with the following restrictions: No lifting, pulling, pushing greater than 10 pounds. Please allow patient 15 to 20-minute rest for every 2 hours of work." (Tr. 870). In making this finding, the ALJ noted that this statement was inconsistent with evidence of record showing that Claimant has returned to at least light work. (Tr. 25). Additionally, even if the ALJ had found this statement persuasive, it still would have been inconsistent with Dr. Goewey's opinion because the restrictions imposed by Claimant's primary care physician were only to remain in place until December 2021. (Tr. 25) (referencing Tr. Ex. 13F, p. 870). The record indicates that the consensus among Claimant's medical providers is that the appropriate treatment for Claimant's back problems is continued physical therapy, as opposed to a more extensive treatment, such as surgery or epidural steroid injections. *See* (Tr. 23). The ALJ found that these provider opinions were more readily substantiated by the record than the opinion of Dr. Goewey. *See* (Tr. 23-25).

Of course, it is not only the medical evidence that an ALJ must consider. Claimant's own testimony regarding her need for an ambulatory aid must be adequately addressed as well. In

---

[9] None of the provider notes for the appointments with Dr. Martin, Dr. Lowrey, or Dr. Smith mention Claimant's use of an ambulatory aid.

addressing Claimant's testimony regarding her symptoms, the ALJ concluded that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms [...] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22). In support, the ALJ again pointed to medical imaging of Claimant's back that reflected minimal changes, and emphasized the conservative treatment recommended by Claimant's treating doctors to address her back pain, noting that multiple providers had found it unnecessary to order treatment associated with more severe and debilitating pain. (Tr. 20-25).

Given the above, the ALJ adequately addressed whether Claimant required the aid of an assistive device. Likewise, the ALJ appropriately addressed Dr. Goewey's observations and recommendations themselves as to this issue, and then considered his opinions in the context of Claimant's reported symptoms and her other medical records. Although Dr. Goewey opined that Claimant "will benefit from an assistive device especially for uneven surfaces," he does not specifically state that Claimant requires use of a cane, and his emphasis is on her use of the assistive device on uneven terrain. Even if Dr. Goewey had directly stated that Claimant should always use a cane, that statement would still require some support from the record as a whole, but such support is all the more important here given that Dr. Goewey did not specifically state that Claimant required an assistive device. *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (noting that "Dr. Naum never asserted that plaintiff's observed quality of movement was to be expected nor asserted that use of double-braced canes was necessary given the conditions that all the doctors agree plaintiff has. Observations about plaintiff's gait and ambulation, then, are more like statements made by plaintiff about his conditions, statements that the ALJ here found not entirely credible when compared to objective medical evidence.").

In summary, the Court finds that the ALJ built the required logical bridge between her findings and Claimant's medical records and testimony. Given that the ALJ's determinations as to

these issues falls squarely within her zone of choice, the Court will not disturb them.

### b. The ALJ's Evaluation of Dr. Langford's Opinion

Claimant also contends that the ALJ failed to explicitly either adopt or reject limitations assigned to Claimant by Dr. Langford, whose opinion she found "generally persuasive." [Doc. 12, p.11; Tr. 24-25]. Dr. Langford conducted a psychological evaluation of claimant in July 2020. (Tr. Ex. 5F). Claimant reported to Dr. Langford that she experiences stress and depression due to being unable to work because of her chronic back pain.[10] (Tr. 486). Dr. Langford found that Claimant suffered from anxiety disorder due to other medical conditions, unspecified depressive disorder, and a history of alcohol use disorder. (Tr. 490). She concluded that Claimant "appears to fall into the average range of intellectual functioning." (Tr. 490). Dr. Langford also noted that Claimant "showed no evidence of malingering." (Tr. 488). Though Claimant reported "some problems with her short-term memory and concentration abilities," Dr. Langford concluded that Claimant "showed no evidence of impairment in the short-term, long-term or in remote memory functioning," and "showed slight evidence of impairment in concentration, likely impacted by stress." (Tr. 490). Considering the record, the ALJ concluded that Claimant's "medically determinable impairments of anxiety and depression […] do not cause more than a minimal limitation," meaning that they did not qualify as severe. (Tr. 20). The ALJ also noted that Claimant has never undergone inpatient psychiatric treatment or even seen a mental health professional. (Tr. 24). Though the ALJ found that Dr. Langford's opinion was "generally persuasive," she did not impose any functional limitations in her RFC formulation as a result of Claimant's mental functioning. (Tr. 25). Claimant argues that the ALJ was obligated to either adopt the limitations in the RFC or explain her rejection of them. [Doc. 12, p. 13].

While the ALJ is required to consider and address medical source opinions, she must only

___

[10] Claimant is not alleging that any mental health conditions are disabling her, however, she is alleging that anxiety and depression are symptoms of her physical disabilities. (Tr. Ex. 5F, 14F).

explain why the opinion was not adopted if the RFC assessment conflicts with the opinion of the medical source. SSR 96-8p; see also 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."). Here, the ALJ discussed each of the four broad functional areas set out in the disability regulations known as the "paragraph B" criterial. (Tr. 20-21; referencing 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (the "Listings")). She specifically compared Dr. Langford's findings with the contents of the record, including the psychiatric functioning assessments performed during Claimant's primary care appointments. (Tr. 20-21). The ALJ found that Claimant had no limitation in the second functional area of interacting with others, and the fourth functional area of adapting or managing oneself. (Tr. 20-21). These findings are consistent with the findings of Dr. Langford. (Tr. Ex. 5F). The ALJ found mild limitations in the first functional area of understanding, remembering or applying information, and the third functional area of concentrating, persisting or maintaining pace. (Tr. 20-21). These findings are likewise consistent with Dr. Langford's opinions. (Tr. Ex. 5F). Because the "paragraph B" criteria limitations were found to be mild, and "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," the ALJ properly concluded that the impairment to Claimant's mental functioning was not severe. (Tr. 21 (citing 20 C.F.R. § 404.1520a(d)(1))). A non-severe impairment or combination of impairments "does not significantly limit [a claimant's] mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

The ALJ also explained that "[t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process," and that her RFC analysis for Claimant reflects the degree of limitation she found in the "paragraph B" mental function analysis

(Tr. 21). As noted in the Commissioner's Brief, SSR 96-8 distinguishes between the "paragraph B" criteria evaluation and the RFC determination, stating "that the limitations identified in the 'paragraph B'…criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." [Doc. 14, p. 15 (citing SSR 96-8p)]. Because Claimant's mental limitations were found to be mild, the ALJ was not required to include those limitations when formulating Claimant's RFC. *See, e.g., Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018); *see also Ceol v. Berryhill*, No. 3:15-CV-315, 2017 WL 1194472, at *10 (E.D. Tenn. Mar. 30, 2017) ("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC.").

The ALJ's opinion includes a thorough analysis of Dr. Langford's findings, which she appropriately accounted for in formulating Claimant's RFC. As such, the Court finds that this assignment of error by Claimant is not supported by the record.

### c. The ALJ's Consideration of Claimant's Ability to Afford Medical Treatment

Finally, Claimant argues that the ALJ violated SSR 16-3p because she failed to consider Claimant's inability to afford treatment in her observations regarding gaps in Claimant's medical history. [Doc. 12, p.13-14]; SSR 16-3p, 2016 WL 1119029, at *8-9 (March 16, 2016) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). There are several places in the ALJ's opinion where she either alludes to or directly challenges Claimant's compliance with recommended medical treatment, or diligence in accessing care. Specifically, the ALJ observes that notes from Claimant's primary care provider document a gap in treatment between October 2021 and June 2022 during which time Claimant had run out of both her pain and hypertension medications and concludes

that "[t]his calls into question the claimant's ability to be compliant with her medication for hypertension." (Tr. 23 (referencing Tr. Ex. 14F, p. 879-80)). In response to Claimant's complaints of depression due to her persistent pain and inability to work, the ALJ again highlights an eight-month gap in treatment. (Tr. 23). She also observes that Claimant was referred to a neurologist but that there is no evidence that Claimant attempted to see a neurologist. (Tr. 23). In arriving at conclusions regarding Claimant's treatment history, the ALJ should consider that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." SSR 16-3p. Claimant argues that, to the extent that she has fallen short in treatment compliance, the ALJ was obligated to consider evidence in the record documenting financial difficulties and a lack of insurance. [Doc. 12, p. 14].

Here, the ALJ did acknowledge Claimant's financial situation, and stated in her opinion that "[Claimant] receives no income and has no insurance." (Tr. 24). She also notes several times that Claimant lives with her daughter. (Tr. 21, 24). However, while it is clear from the record that Claimant has significant financial challenges, there is little evidence showing that this lack of financial resources was a barrier to her receiving treatment. On the one hand, multiple places in the record note Claimant's uninsured status and describe a delay in her obtaining care due to her lack of insurance. (Tr. 658, 661, 687). On the other hand, the record reflects that Claimant's providers did their best to ensure her access to medical care. (Tr. 658 ("Pt has been [placed]in charity program and Project Access.[11]")). Even without insurance, the record reflects that Claimant was able to access surgery and physical therapy, multiple diagnostic imaging services, and to obtain care from specialists in addition to her primary care doctor. There is no evidence in the record which demonstrates that Claimant's access to care was inhibited by her inability to pay. Both her lack of insurance and her continued access to treatment are documented in the ALJ's

---

[11] Project Access is a community charity that coordinates specialty medical care between physicians, hospitals, and other community partners that donate their services, and local residents who don't qualify for other programs. Project Access, https://www.setnprojectaccess.org/(last visited Jan.17, 2025).

opinion. It appears instead that Claimant was less than diligent at times in obtaining treatment, and that only conservative treatment was recommended for her back problems when she did obtain care from specialists.

## IV.    CONCLUSION

After a careful review of the entire record in this cause, and for the reasons stated above, the Court finds that the findings of the ALJ were supported by substantial evidence, and the ALJ conformed to the relevant legal standards. Therefore, the Court **RECOMMENDS** that the final decision of the agency be affirmed.[12]

Respectfully submitted,

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[12]    Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party.  28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Such objections must conform to the requirements of Fed. R. Civ. P. 72(b); *see United States v. Branch*, 537 F.3d 582 (6th Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing the failure to file objections in compliance with the time period waives the right to appeal the District Court's order).  The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).